SPECHT et al., Appellants and Cross–Appellees,

v.

FINNEGAN et al., Appellees and Cross–Appellants.

[Cite as *Specht v. Finnegan,* 149 Ohio App.3d 201, 2002-Ohio-4660.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–02–1012.

Decided Sept. 6, 2002.

202

Darrell V. Van Horn, for appellants and cross-appellees.

Reginald S. Jackson, Jr., Steven R. Smith and Jennifer S. Mistry, for appellees and cross-appellants.

SHERCK, Judge.

{¶ 1} This appeal comes to us from orders of the Lucas County Court of Common Pleas. There, the court granted relief and awarded attorney fees to citizens in a suit against township officials. Because we conclude that the trial court properly found that the trustees repeatedly violated Ohio's Public Records and Open Meeting Acts and the court did not abuse its discretion in awarding attorney fees, we affirm.

{¶ 2} Appellants/cross-appellees ("appellants") are Sherry J. Specht, Betty Miller, and Cheryl Barto,[1] all residents of Sylvania Township, Lucas County, Ohio. Appellees/cross-appellants ("appellees") are the Sylvania Township Board

---

1. As will be discussed, below, an original complainant, attorney Linda S. Cook, in the course of the case withdrew as a named plaintiff.

of Trustees and its individual members: Donald J. Finnegan Jr., Dock D. Treece, and George D. Fanning, as well as the township administrator, James C. Maxwell.

{¶ 3} On April 12, 1998, appellants filed a 27–count complaint alleging that appellees had engaged in multiple violations of Ohio's Public Records Act, R.C. 149.43, and Ohio's Open Meeting Law ("Sunshine Act"), R.C. 121.22. Appellants also alleged waste and mishandling of township funds. Through three additional amended complaints, appellants added three additional counts and a petition for a writ of mandamus. See *Specht v. Finnegan* (July 19, 2002), 6th Dist. No. L–02– 1012. Appellants sought injunctive relief prohibiting appellees from further violations, an invalidation of the acts taken in violation of the law, damages, costs, and reasonable attorney fees.

{¶ 4} Ultimately, the trial court found in favor of appellants in six areas. The court found a Public Records Act violation in that appellees failed to timely deliver public records when requested and, in 1998, overcharged for copies. The court nevertheless declined to issue the writ of mandamus sought because appellees had already instituted a reimbursement policy for the copy costs. The trial court then ruled that appellants were entitled to attorney fees on this issue.

{¶ 5} The court also found that the trustees violated the Open Meetings Act (1) when they deliberated outside an open meeting on the hiring of a new police chief, (2) in retaining legal counsel outside a public meeting, and (3) on three occasions when the trustees locked the doors to the township hall during board meetings. The court granted an injunction in these areas, imposed a $500 civil fine for each of these five violations, and ordered appellees to pay costs and reasonable attorney fees.

{¶ 6} Following this ruling, counsel for appellants submitted a fee request for $85,792.50. Appellees submitted a memorandum in opposition.

{¶ 7} The trial court reduced this amount by $25,794, the amount claimed by attorney Linda Cook while she was also a named plaintiff. The court then deducted $10,489.50. This was the amount attributed to time spent making the multiple amendments to the complaints. The court concluded that this time was the result of counsel's inexperience in this area of the law and, pursuant to Disciplinary Rule DR 2–106(B)(1) and (7), ought not to be taxed to appellees. For the same reason, an additional $3,645 was deducted for time spent for research and review of the Sunshine Laws after attorney Cook withdrew as a party.

{¶ 8} The balance of the claimed attorney fees, after these deductions, was $46,524. The court, however, determined that counsel ultimately should not be

compensated for unsuccessful allegations and awarded attorney fees in the amount of $16,500.

{¶ 9}  From this judgment appellants now bring this appeal, setting forth the following three assignments of error:

{¶ 10}  "I. The court abused its discretion, and therefore erred prejudicially, when it refused to award any attorney or paralegal fees to plaintiffs for that period of time during which the attorney was one of several named plaintiffs in the case.

{¶ 11}  "II. The court abused its discretion when, without benefit of a hearing or of briefing by the parties, it reduced the attorney fees on the basis that the attorney spent more time on certain activities than a more experienced attorney would have spent, when the only contested issues before the court were whether plaintiffs were entitled to fees during that time in which attorney Cook herself was a party in the matter, and to what degree, if any, attorney fees should be reduced to a pro rata portion of the total, reflective of the merit, or lack thereof, of plaintiffs' claims.

{¶ 12}  "A. The court should not have considered the reasonableness of the time spent on the various matters of the case.

{¶ 13}  "B. The fees charged by attorney Linda Cook were in fact reasonable based upon the novelty of the subject matter, Cook's expertise, and her hourly rates.

{¶ 14}  "III. The court abused its discretion, and therefore erred prejudicially, when it further reduced the attorney fees on the basis that appellant did not achieve success on all counts, with the result that the ultimate attorney fee awarded was less than 20 percent of the actual fees incurred."

{¶ 15}  Appellees have cross-appealed, citing the following two assignments of error:

{¶ 16}  "Assignment of Error I

{¶ 17}  "The trial court erred in its finding that Defendants/Cross–Appellants committed five violations of Ohio's Open Meeting Act and one violation of the Public Records Act.

{¶ 18}  "Assignment of Error II

{¶ 19}  "The trial court erred in imposing civil forfeitures on Defendants/Cross–Appellants for each violation of the Open Meetings Act."

{¶ 20}  We shall first discuss appellees' cross-appeal. But before we do, we note that appellees suggest that we review the trial court's findings de novo. The trial court in effect consolidated the merits of appellants' claims with their

request for injunctive relief. In so doing, the court relied on hearing testimony, as well as affidavits and deposition testimony. Because of this, appellees suggested that the disposition of this matter is, in effect, a summary judgment.

{¶ 21} The trial court heard live testimony in this matter and is therefore entitled to deference as to its factual findings emanating from that hearing. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. Moreover, we have carefully reviewed the court's 30–page opinion and judgment entry. We note that the facts upon which the court relies are either undisputed or are conclusions drawn from the hearing. The trial court's factual findings in disputed matters, therefore, will not be disturbed unless they are against the manifest weight of the evidence.

{¶ 22} Factual determinations are not against the manifest weight of the evidence if supported by some competent, credible evidence, *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus, or, with respect to injunctive-relief findings, which require clear and convincing evidence, *Household Fin. Corp. v. Altenberg* (1966), 5 Ohio St.2d 190, 193, 34 O.O.2d 348, 214 N.E.2d 667, evidence that "will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus, *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. Questions of law are examined de novo. *Ohio Bell Tel. Co. v. Pub. Util. Comm.* (1992), 64 Ohio St.3d 145, 147, 593 N.E.2d 286.

## I

{¶ 23} In the first assignment of error of their cross-appeal, appellees challenge the trial court's findings.

{¶ 24} With respect to the trial court's conclusion concerning the Public Records Act, R.C. 149.43(B)(1) provides:

{¶ 25} "[A]ll public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. * * * [U]pon request, a public office or person responsible for public records shall make copies available at cost, within a reasonable period of time."

{¶ 26} Pursuant to the statute, fees charged for copying public documents must reflect the actual cost involved in making the copy without charges for labor or employee time, unless the cost is otherwise set by statute. *State ex rel. Warren Newspapers v. Hutson* (1994), 70 Ohio St.3d 619, 625, 640 N.E.2d 174. Appellees concede that they originally charged 25 cents per copy, but as a result of an investigation of the actual cost of a copy, later reduced the cost to 10 cents per page and instituted a refund policy. From this, the trial court properly

inferred that the original charge of 25 cents was excessive and, therefore, a violation of R.C. 149.43.

{¶ 27} The trial court also concluded that in delaying up to two months in responding to appellants' document request, appellees were not acting "promptly" within the meaning of the statute and, therefore, committed a second Public Records Act violation. This finding, too, is supported by the evidence and is in conformity with the law. Cf. *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 53, 689 N.E.2d 25 (24 days not sufficiently prompt.)

{¶ 28} The remainder of the trial court's findings involves violations of the Ohio Open Meetings Act, R.C. 121.22. Unless the subject matter is specifically excepted, R.C. 121.22(A) directs public officials "to take official action and to conduct all deliberations upon official business only in open meetings." A "meeting" is "any prearranged discussion of the public business of the public body by a majority of its members." R.C. 121.22(B)(2).

{¶ 29} In order to show a violation of R.C. 121.22, a plaintiff must demonstrate that "a resolution, rule or formal action of some kind" was adopted by a public body at a meeting that was not open to the public. *Holeski v. Lawrence* (1993), 85 Ohio App.3d 824, 829, 621 N.E.2d 802, discretionary appeal not allowed in (1993), 67 Ohio St.3d 1438, 617 N.E.2d 688. A "formal action" encompasses deliberations concerning public business. Id.

{¶ 30} On March 18, 1997, appellees passed a resolution naming Wayne Seely as Sylvania Township Police Chief. The other candidate for the position was Thomas Purcel. At the hearing on this matter, Purcel testified that the day before the board took its vote, appellee Finnegan told him that Seely had been chosen as police chief. From this testimony, the trial court inferred that deliberations concerning hiring a police chief took place outside a public meeting. The court rejected appellees' argument that Seely had not been officially selected, but the two candidates merely ranked.

{¶ 31} Like the trial court, we cannot envision how a candidate may be ranked absent some deliberation. Consequently, we conclude that the trial court properly determined this to be a violation of R.C. 121.22.

{¶ 32} On February 19, 1998, Wolfgang Drescher was appointed township solicitor. Prior to that date, Drescher nevertheless performed legal services for the township at the request of at least two trustees. He submitted a bill to the township for these services, but later withdrew it when the propriety of the authorization for these services was challenged. The court found this sufficient evidence that appellees took formal action (at least deliberation—likely authoriz-

ing employment) outside a public meeting. The evidence presented was sufficient to support this conclusion.

{¶ 33} On May 21, 1998, Sylvania Township Trustees held a special meeting at 3:00 p.m. The meeting was before their regularly scheduled 6:00 p.m. meeting. At 4:30 p.m., while the first meeting was in progress, the doors to the township hall were locked and not reopened until after the 6:00 p.m. meeting began. On June 1, 1998, a 2:00 p.m. special meeting was held. Again, while this meeting was in progress, the doors of the township hall were locked.

{¶ 34} "All meetings of any public body are declared to be public meetings open to the public at all times." R.C. 121.22(C). "[M]embers of a public body may hold [a private] executive session only after a majority of a quorum of the public body determines, by a role call vote, to hold an executive session and only at a regular or special meeting for the sole purpose of the consideration of [statutorily specified matters.]" R.C. 121.22(G). However, R.C. 121.22(H) does not permit the public body to adopt any resolution or rule or take any formal action during an executive session. Thus, even at a special session called for the purposes of entering an executive session, the meeting must begin as an open session and must be adjourned in open session. See Ohio Attorney General, An Ohio Sunshine Laws Update (1997) 58.

{¶ 35} Clearly, locking the doors to a building in which a public meeting is being held negates the public character of the meeting and is a violation of R.C. 121.22. The only defense available to the public body when public access is denied to a public meeting is that the meeting is statutorily excepted from the public meeting requirement. *State ex rel. Randles v. Hill* (1993), 66 Ohio St.3d 32, 35, 607 N.E.2d 458. However, even if the executive sessions on May 21, 1998, and June 21, 1998, were properly excepted from the Sunshine Law, their openings and closings were not. The township hall was locked at the close of the May 21 and June 21 special sessions and at the beginning of the May 21 regular session. Thus, the record supports the trial court's finding that three violations of R.C. 121.22 occurred.[2]

{¶ 36} Accordingly, appellees' first cross-assignment of error is not well taken.

II

{¶ 37} In their second assignment of error, appellees contend that the trial court miscalculated the civil forfeitures for Open Meeting Act violations. The

---

2. Appellees' argument that appellants failed to prove that anyone was excluded is unavailing. The statute requires that the meeting be open. If it is not, the statute is violated.

court levied $500 for each of the five violations it found. Appellees, citing references in R.C. 122.21(I)(1) and (2) to "an" injunction, argue that by the use of this singular article, the legislature intended that there be only one civil forfeiture per injunction issued, irrespective of the number of violations found.

{¶ 38} This argument is specious. The statute specifically states that it shall be liberally construed to require public officials to comply with the Open Meeting Law. R.C. 121.22(A). We concur with the Fifth District Court of Appeals, which concluded:

{¶ 39} "To assess only one $500 civil forfeiture for repeated violations would do little to encourage compliance. Accordingly, we hold [that] the $500.00 civil forfeiture * * * is applicable to each violation found." *Manogg v. Stickle* (Mar. 15, 1999), Licking App. No. 98CA00102, 1999 WL 173275.

{¶ 40} Accordingly, appellees' second cross-assignment of error is not well taken.

### III

{¶ 41} We turn now to appellants' assignments of error concerning the trial court's reduction in the requested amount of attorney fees awarded.

{¶ 42} Both the Ohio Public Records Act and the Open Meeting Act permit a trial court, in its discretion, to award a prevailing plaintiff attorney fees. R.C. 149.43(C); *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 111, 529 N.E.2d 443; R.C. 121.22(I)(2); *White v. Clinton Cty. Bd. of Commrs.* (1996), 76 Ohio St.3d 416, 424, 667 N.E.2d 1223. Matters within a court's discretion will not be disturbed on appeal absent an abuse of that discretion. An "abuse of discretion" is more than an error of law or a lapse of judgment; the term implies that the court's attitude is arbitrary, unreasonable, or unconscionable. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 168–169, 559 N.E.2d 1301.

### A

{¶ 43} In their first assignment of error, appellants insist that the trial court abused its discretion when it refused to allow "attorney or paralegal" fees for the period during which Linda Cook acted as both appellants' trial counsel and was a named plaintiff.

{¶ 44} This assignment of error is not well taken. Paralegal fees are compensable as an element of attorney fees. *Jackson v. Brown* (1992), 83 Ohio App.3d 230, 232, 614 N.E.2d 847. Attorney fees are not allowed to pro se litigants. *State ex rel. Thomas v. Ohio State Univ.* (1994), 71 Ohio St.3d 245, 251,

643 N.E.2d 126. Until Linda Cook withdrew as a named plaintiff, she was a pro se litigant.

## B

{¶ 45} In their second assignment of error, appellants assert that the trial court erred in considering, and subsequently reducing, the attorney fees awarded them based on an analysis of the reasonableness of the time spent on various matters compared to the time that would have been required by an attorney more experienced in this field. According to appellants, the parties stipulated as to the reasonableness of the hours charged by attorney Cook.

{¶ 46} Noticeably absent from appellants' brief is a citation to the record for this claimed stipulation. Appellees concede that they agreed that attorney Cook indeed performed the number of hours of work she claimed, but they insist that this agreement did not also imply a concession that these hours were reasonable for that task.

{¶ 47} Appellants bear the burden of showing error by reference to the record. *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 400 N.E.2d 384; App.R. 16(A)(7), (D). Since the stipulation appellants rely on is in dispute and they have failed to demonstrate where in the record it appears, they cannot prevail on this basis.

{¶ 48} Alternatively, appellants argue that attorney Cook's fees were indeed reasonable. The trial court, however, examined the fees at length against the factors enumerated in DR 2–106 and concluded, based on the time, labor, and novelty of the issue and attorney Cook's admitted inexperience, that some of the hours claimed were excessive. We cannot say that this determination was arbitrary, unreasonable, or unconscionable. Accordingly, appellants' second assignment of error is not well taken.

## C

{¶ 49} Finally, appellants contend that the trial court abused its discretion when it further reduced the attorney fees awarded based on the ratio of success to the total number of claims.

{¶ 50} The trial court explained its consideration of this matter as follows:

{¶ 51} "In determining a proper fee award, DR 2–106[(B)](4) allows for consideration of the results obtained. Parties are not entitled to fees for those claims that are meritless. *Ohio Patrolmen's Benevolent Assn. v. City of Mentor* (2000), 89 Ohio St.3d 440, 448 [732 N.E.2d 969]. [Appellants] suggest that they were successful on fifty percent of their claims, therefore, any reduction should

be according to that success rate. [Appellees] assert that plaintiffs were only successful in five of the thirty counts set forth in the complaint, therefore, the fee award should be based on that ratio. The court agrees with the parties' assertions to the extent that, since it cannot be determined how much time was spent on each allegation, a ratio or percentage provides a good starting point. However, the court does not agree with either party's view as to the number or percentage of meritorious claims.

{¶ 52} "If one looks strictly at the number of counts upon which [appellants] succeeded, the appropriate ration would be 5:31. However, some of the counts alleged multiple violations, for example, in count twenty-nine, the court found three violations of the [Open Meetings Act]. Additionally, [appellants] represented to the court that at least some of the work done to support the meritless claims also supported the claims with merit. For these reasons, the court finds that a figure based strictly on the number of counts on which [appellants] prevailed will not provide adequate compensation. However, the court is also mindful of the fact that [appellants] failed to submit evidence or case law to support twenty of the counts alleged. Based on this, the court finds that a reduction in the fee award based on the number of unsupported allegations is more appropriate, and, therefore awards attorney fees of $16,500.00." (Footnote omitted.)

{¶ 53} We have attempted to arrive at trial balances using the various formulas the trial court considered. Our efforts in applying these formulas do not yield the $16,500 figure the court ultimately awarded. While it would be comforting to have some magic calculus for this, we cannot say that a formulaic solution would be less arbitrary than the considered approach employed by the trial court—an approach that is in our view reasonable. Consequently, we conclude that the trial court did not abuse its discretion in arriving at a reasonable attorney fee award.

{¶ 54} Accordingly, appellants' third assignment of error is not well taken.

{¶ 55} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs to be divided equally between appellants and appellees.

Judgment affirmed.

PETER M. HANDWORK and MELVIN L. RESNICK, JJ., concur.