NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

KAREN FANN, in her official capacity as President of the Arizona Senate;
WARREN PETERSEN, in his official capacity as Chairman of the Senate
Judiciary Committee; the ARIZONA SENATE, a house of the Arizona
Legislature, *Petitioners*,

*v.*

THE HONORABLE MICHAEL KEMP, Judge of the SUPERIOR COURT
OF THE STATE OF ARIZONA, in and for the County of MARICOPA,
*Respondent Judge*,

AMERICAN OVERSIGHT, *Real Party in Interest*.

No. 1 CA-SA 21-0141
FILED 8-19-2021

Petition for Special Action from the Superior Court in Maricopa County
No. CV2021-008265
The Honorable Michael Kemp, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

Statecraft PLLC, Phoenix
By Kory A. Langhofer, Thomas J. Basile
*Counsel for Petitioners*

Coppersmith Brockelman PLC, Phoenix
By L. Keith Beauchamp, Roopali H. Desai, D. Andrew Gaona
*Counsel for Real Party in Interest*

---

**MEMORANDUM DECISION**

Acting Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jennifer B. Campbell joined.

---

**C R U Z**, Judge:

¶1 In this special action, Petitioners Karen Fann, Warren Petersen, and the Arizona Senate (collectively, the "Senate") seek a writ of prohibition or other special action relief to prevent the Senate from being compelled by the superior court to disclose documents related to its audit of the November 2020 general election. For the following reasons, we accept jurisdiction and deny relief.

**FACTUAL AND PROCEDURAL HISTORY**

¶2 The Arizona Senate initiated an audit of voting equipment used and ballots cast in Maricopa County relating to the 2020 general election, and it retained a private corporation, Cyber Ninjas, to serve as its primary vendor in conducting the audit. Cyber Ninjas then hired multiple sub-vendors to assist in the work, also private companies.

¶3 In April and May 2021, Real Party in Interest American Oversight submitted public record requests to the Senate for documents related to the audit. The Senate produced about 60 pages of documents but asserted it would not produce documents in the possession and custody of Cyber Ninjas or any of its sub-vendors.

¶4 American Oversight filed a complaint and order to show cause under Arizona's Public Records Law ("PRL"), Arizona Revised Statute ("A.R.S") section 39-121, *et seq.*, to compel production of the documents related to the audit, including those in the possession or custody of Cyber Ninjas and its sub-vendors. Over the following several weeks, the Senate produced about 900 more pages of records to American Oversight, and the Senate informed American Oversight that it was currently reviewing an additional 15,000 documents to disclose.

¶5        The Senate then moved to dismiss American Oversight's complaint, arguing any audit records in possession of Cyber Ninjas or its sub-vendors and agents are not subject to the PRL.  The Senate also argued that its compliance with the PRL is a nonjusticiable political question.  The superior court denied the motion in a July 14, 2021 minute entry.

¶6        American Oversight lodged a proposed order that memorialized the court's July 14 minute entry and directed the Senate to disclose records related to the audit, including those in possession of Cyber Ninjas and its sub-vendors.  The Senate objected, arguing the order would improperly serve as a final judgment on the merits; the case required further discovery; and the Senate was legislatively immune from the suit.  The superior court rejected the Senate's arguments in an August 2, 2021 minute entry.  The court entered the proposed order, directing the Senate to immediately disclose the records related to the audit.

¶7        The Senate subsequently filed this special action petition, as well as a motion to stay the August 2 order, which we granted pending resolution of this petition.

## SPECIAL ACTION JURISDICTION

¶8        Special action review is generally appropriate when there is no "equally plain, speedy, and adequate remedy by appeal."  Ariz. R.P. Spec. Act. 1(a); *see generally Sw. Gas Corp. v. Irwin*, 229 Ariz. 198, 201, ¶¶ 5-7 (App. 2012).  Our decision to accept special action jurisdiction is discretionary, and it is "appropriate in matters of statewide importance, issues of first impression, cases involving purely legal questions, or issues that are likely to arise again."  *State v. Superior Court (Landeros)*, 203 Ariz. 46, 47, ¶ 4 (App. 2002).

¶9        Here, the issues raised in the petition are pure questions of law and are of statewide importance.  Accordingly, we accept special action jurisdiction.

## DISCUSSION

¶10       The PRL provides: "[p]ublic records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours."  A.R.S. § 39-121.  Section 39-121.01(B) requires "[a]ll officers and public bodies" to "maintain all records . . . reasonably necessary or appropriate to maintain an accurate knowledge of their official activities and of any of their activities that are supported by monies from this state or any political subdivision of this state."  Further, "[e]ach public body shall

be responsible for the preservation, maintenance and care of that body's public records, and each officer shall be responsible for the preservation, maintenance and care of that officer's public records," and it is "the duty of each such body to carefully secure, protect and preserve public records from deterioration, mutilation, loss or destruction . . . ." A.R.S. § 39-121.01(C). Section 39-121.01(A) defines "Officer" and "Public body" as follows:

> A. In this article, unless the context otherwise requires:
>
> 1. "Officer" means any person elected or appointed to hold any elective or appointive office of any public body and any chief administrative officer, head, director, superintendent or chairman of any public body.
>
> 2. "Public body" means this state, any county, city, town, school district, political subdivision or tax-supported district in this state, any branch, department, board, bureau, commission, council or committee of the foregoing, and any public organization or agency, supported in whole or in part by monies from this state or any public subdivision of this state, or expending monies provided by this state or any political subdivision of this state.

¶11 The PRL further provides: "[a]ny person who has requested to examine or copy public records pursuant to this article, and who has been denied access to or the right to copy such records, may appeal the denial through a special action in the superior court, pursuant to the rules of procedure for special actions against the officer or public body." A.R.S. § 39-121.02(A); *see also* A.R.S. § 39-121.02(C) ("Any person who is wrongfully denied access to public records pursuant to this article has a cause of action against the officer or public body for any damages resulting from the denial.").

I.     Legislative Immunity

¶12 Petitioners first argue that they are constitutionally immune from suit because "the decision whether to release or withhold audit records is a legitimate legislative function."

¶13 Pursuant to the United States and Arizona Constitutions, absolute legislative immunity protects legislators from civil and criminal

4

liability for statements made during formal legislative proceedings. Ariz. Const. art. IV, pt. 2, § 7 ("No member of the legislature shall be liable in any civil or criminal prosecution for words spoken in debate."); U.S. Const. art. I, § 6, cl. 1 ("[F]or any Speech or Debate in either House, [senators and representatives] shall not be questioned in any other Place."). The protection has been extended to acts beyond pure speech and debate and applies to legislative acts that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House. " *Gravel v. United States*, 408 U.S. 606, 625 (1972); *see also Mesnard v. Campagnolo*, __ Ariz. __, __, ¶ 15, 489 P.3d 1189, 1194 (2021) (citation and internal quotation marks omitted).

¶14 However, legislators are not afforded absolute immunity for all acts that are "in any way related to the legislative process," nor is legislative immunity intended to make legislators "super-citizens," immune from all responsibility. *Mesnard*, __ Ariz. at __, ¶ 14, 489 P.3d at 1194; *United States v. Brewster*, 408 U.S. 501, 516 (1972). As our supreme court has noted, the concept of legislative immunity was intended "to shield individual officials from personal liability for their legislative acts," and "[i]t has nothing to do with shielding governmental entities from challenges to claimed illegal actions." *State ex rel. Brnovich v. Ariz. Bd. of Regents*, 250 Ariz. 127, 134, ¶ 28 (2020).

¶15 The Senate, relying on *Mesnard*, argues the legislature's decision whether to release documents under the PRL is a legislative act, protected by absolute immunity. *See Mesnard*, __ Ariz. at __, ¶ 21, 489 P.3d at 1195. But *Mesnard* concluded that a legislator's disclosure of a public record under the PRL was a legislative function that afforded him immunity from personal liability in a defamation suit. *Id.* Consistent with *Brnovich*, legislative immunity does not prevent this action against legislators in their capacity as elected officials, or the legislature, for its failure to comply with statutory obligations. *See Brnovich*, 250 Ariz. at 134, ¶ 28. The ability to appeal the denial of access to public records is expressly authorized by A.R.S. § 39-121.02, and American Oversight "is not suing officials for personal liability in their individual capacities." *Id.* The legislature itself enacted this statute, and it could have completely exempted itself from disclosure requirements, like its federal counterpart, the Freedom of Information Act. *See* 5 U.S.C. §§ 551(1)(A), 552. But instead, the legislature chose to include itself within the definition of those officers and public bodies subject to the PRL. *See* A.R.S. § 39-121.01(A)(1), (2).

¶16 This is not to say the legislature can never properly refuse to disclose records under the PRL. There are many statutory exemptions to the PRL. *See, e.g.*, A.R.S. §§ 41-1279.05, 49-1403. Additionally, though there is a presumption in favor of disclosing public records, this presumption can be rebutted by a demonstration of "confidentiality, privacy, or the best interests of the state." *Scottsdale Unified Sch. Dist. No. 48 of Maricopa Cnty. v. KPNX Broad. Co.*, 191 Ariz. 297, 300, ¶ 9 (1998) (citation and internal quotation marks omitted). If any of these interests outweigh the public's right to access the records, the legislature can refuse disclosure. *Id.* However, the legislature is not afforded a blanket exemption from compliance with the PRL, nor is it exempt from lawsuits contesting a denial of access to public records.

¶17 The purpose of the legislative immunity doctrine is to "support the rights of the people, by enabling their representatives to execute the functions of their office without fear of prosecutions"; it does not exist to serve the personal benefit of the legislators. *Ariz. Indep. Redistricting Comm'n v. Fields*, 206 Ariz. 130, 137, ¶ 17 (App. 2003) (citation and internal quotation marks omitted). And it does not exist to shield the Senate from complying with a statute it has enacted. Allowing the legislature to disregard the clear mandate of the PRL would undermine the integrity of the legislative process and discourage transparency, which contradicts the purpose of both the immunity doctrine and the PRL.

II.      Custody under the PRL

¶18 The PRL "exists to allow citizens to be informed about what their government is up to." *Scottsdale Unified Sch. Dist. No. 48 of Maricopa Cnty.*, 191 Ariz. at 302-03, ¶ 21 (citation and internal quotation marks omitted). "Arizona law defines 'public records' broadly and creates a presumption requiring the disclosure of public documents." *Griffis v. Pinal County*, 215 Ariz. 1, 4, ¶ 8 (2007). "Only documents with a substantial nexus to government activities qualify as public records, and the nature and purpose of a document determine whether it is a public record." *Lake v. City of Phoenix*, 222 Ariz. 547, 549, ¶ 8 (2009) (citation and internal quotation marks omitted). We review de novo a document's status as a public record, *id.* at ¶ 7, but defer to the superior court's findings of fact. *Phoenix Newspapers, Inc. v. Keegan*, 201 Ariz. 344, 347, ¶ 11 (App. 2001).

¶19 Public officials must "make and maintain records reasonably necessary to provide knowledge of all activities they undertake in furtherance of their duties." *Carlson v. Pima County*, 141 Ariz. 487, 490 (1984). As found by the superior court, "[t]he audit is an important public

function being conducted by the Arizona Senate pursuant to the Arizona Constitution and is an official legislative activity." There is no dispute that the audit is being conducted with public funds, and that Cyber Ninjas and its sub-vendors are agents of the Senate.[1] In this case the Senate has argued no exemption that, if properly recognized, would shield itself from the responsibility to inform the public of activities regarding the audit.

¶20 The superior court found that the Senate had "at least constructive possession" of its agents' records and ordered it to produce specific public records generated in connection with the audit, including "[a]ll documents and communications relating to the planning and execution of the audit, all policies and procedures being used by the agents of the Senate Defendants, and all records disclosing specifically who is paying for and financing this legislative activity as well as precisely how much is being paid."

¶21 The Senate argues that it does not have "custody" of documents "maintained by corporate vendors at their own headquarters or in their own internal computer systems," and that the superior court's determination that they had constructive possession of the records is inconsistent with the PRL.

¶22 We disagree. "'[C]ustody' means '[t]he care and control of a thing or person for inspection, preservation, or security.'" *W. Valley View, Inc. v. Maricopa Cnty. Sheriff's Office*, 216 Ariz. 225, 229, ¶ 16 (App. 2007) (quoting *Black's Law Dictionary* 412 (8th ed. 2004)). Nothing in the plain text of the PRL suggests that physical possession of the public records by the Senate is required. "It is the nature and purpose of the document, not the place where it is kept, which determines its status." *Salt River Pima-Maricopa Indian Cmty. v. Rogers*, 168 Ariz. 531, 538 (1991) (citation omitted). "An agency has control over the documents when they have come into the agency's possession in the legitimate conduct of its official duties." *Id.* at 541-42 (citation and internal quotation marks omitted). "Possession in this context has been interpreted to mean both actual and constructive possession. [A]n agency has constructive possession of records if it has the

---

[1] The Senate admitted in its answer that Cyber Ninjas is the Senate's "authorized agent." American Oversight does not argue that Cyber Ninjas or its sub-vendors are officers or public bodies, *de facto* officers or public bodies, or quasi-agencies. *See State ex rel. Am. Ctr. for Econ. Equal. v. Jackson*, 53 N.E.3d 788, 793, ¶ 15 (Ohio Ct. App. 2015).

right to control the records, either directly or through another person."[2] *Bd. of Pilot Comm'rs v. Superior Court*, 160 Cal.Rptr.3d 285, 302 (Cal. Ct. App. 2013) (citation and internal quotation marks omitted).

¶23 Here, the Senate defendants, as officers and a public body under the PRL, have a duty to maintain and produce public records related to their official duties. This includes the public records created in connection with the audit of a separate governmental agency, authorized by the legislative branch of state government and performed by the Senate's agents. *See* A.R.S. § 39-121.01(B). The requested records are no less public records simply because they are in the possession of a third party, Cyber Ninjas. As the North Dakota Supreme Court aptly observed:

> The City contends that even if these documents are subject to the open-record law, PDI is an independent contractor and not an agent of the City, and the documents were in the possession of PDI. However, whether PDI is an independent contractor or agent is not relevant . . . . PDI was hired by the City to screen and evaluate candidates for a public office. If the City had undertaken this task without hiring PDI, the applications would clearly have been subject to the open-record law. We do not believe the open-record law can be circumvented by the delegation of a public duty to a third party, and these documents are not any less a public record simply because they were in possession of PDI. . . . [The] purpose of the open-record law would be thwarted if we were to hold that documents so closely connected with public business but in the possession of an agent or independent contractor of the public entity are not public records. We conclude that the documents in this case are public records . . . .

*Forum Pub. Co. v. City of Fargo*, 391 N.W.2d 169, 172 (N.D. 1986) (citations omitted).

¶24 The Senate argues that the superior court's order would open the files of all government vendors to public inspection. In this case, the Senate outsourced its important legislative function to Cyber Ninjas and its

---

[2] "The Arizona statute, adopted in 1901, was taken from a California provision. Consequently, cases arising under the California statute are helpful to the interpretation of our law." *Salt River*, 168 Ariz. at 537 (citation omitted).

sub-vendors. However, as noted *supra* paragraph 18, only documents with a substantial nexus to government activities qualify as public records. There is no reason why vendors providing ordinary services rather than performing core governmental functions would be subject to the PRL.

**¶25**      We find no error with the superior court's determination that the requested documents are public records that must be disclosed.

## CONCLUSION

**¶26**      For the foregoing reasons we accept jurisdiction, deny relief, and lift the stay of proceedings previously issued regarding the superior court's August 2 order.

