165 P.3d 203

WEST VALLEY VIEW, INC., an Arizona corporation, Plaintiff/Appellee/Cross–Appellant,

v.

MARICOPA COUNTY SHERIFF'S OF-FICE, a political subdivision and public body, Defendant/Appellant/Cross–Appel-lee.

No. 1 CA–CV 06–0549.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 16, 2007.

Perkins Coie Brown & Bain, P.A. by Daniel C. Barr, Colin P. Ahler, Phoenix, for Plaintiff/Appellee/Cross–Appellant.

Wilenchik & Bartness, P.C. By Dennis I. Wilenchik, Phoenix, for Defendant/Appellant/Cross–Appellee.

JOHNSEN, Judge.

¶ 1 The Maricopa County Sheriff's Office routinely distributes press releases by e-mail to many news media in Arizona and elsewhere. Until recently, among those receiving the Sheriff's Office e-mails was a suburban Phoenix weekly newspaper, the *West Valley View.* The Sheriff's Office removed the *West Valley View* from its e-mail list because, it said, the paper did not appear to be "using" the news releases in a manner satisfactory to the Sheriff. Objecting to what it felt was an arbitrary and vindictive action, the newspaper submitted a public records request pursuant to Arizona Revised Statutes ("A.R.S.") section 39–121.01 (Supp.2005) seeking copies of all future press releases issued by the Sheriff. When the Sheriff's Office did not respond, the newspaper filed a special action petition in the superior court. We affirm the superior court's order granting relief to the newspaper. While the public records law does not require the Sheriff's Office to put the *West Valley View* back on its e-mail distribution list, we affirm the superior court's conclusion that the statute does require the Sheriff to provide the newspaper with hard-copy printouts of its press releases the day they are e-mailed to other media.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 The *West Valley View,* published by West Valley View, Inc., is a semi-weekly newspaper serving Buckeye, Avondale, Goodyear, Litchfield Park and Tolleson. The newspaper covers crime and law enforcement agencies, including the Sheriff's Office. As noted, the Sheriff's Office routinely distributes press releases to media members inside and outside Arizona via e-mail. At one time, the *West Valley View* was on the Sheriff's Office e-mail distribution list; however, when the Sheriff's Office sent out a press release in Fall 2005 concerning the discovery of the remains of two murder victims at a Buckeye construction project, the *West Valley View* was not on the distribution list. During a telephone call a few days later, the Sheriff's Office public information officer, Lt. Paul Chagolla, informed the *West Valley View* managing editor that the Sheriff's Office would no longer e-mail press releases to the newspaper. Chagolla explained, "We like to see that our work is fruitful and we've sent [the *West Valley View* ] multiple story ideas, multiple releases and quite frankly don't see them covered." Asked to reconsider the decision, Chagolla responded, "I'm not going to put you on the [e-mail] list because it's my prerogative to do so."

¶ 3 On November 14, 2005, counsel for West Valley View wrote the Sheriff's Office,

stating, "[p]lease consider this letter an ongoing request under the Arizona Public Records Law, A.R.S. § 39–121 et seq[.] for the [Sheriff's Office] to provide the West Valley View all of its press releases at the same time that it provides that information to other news media." Receiving no response to his November 14 letter, counsel for the newspaper wrote on again on December 22, 2005, to the in-house attorney for the Sheriff's Office asking for a response to its "express ongoing request under the Arizona Public Records Law." The Sheriff's Office did not respond to that letter, either.[1] The newspaper then filed a special action petition in the superior court.

¶ 4 After briefing, the superior court heard oral argument on June 28, 2006. Two days later, the court accepted special action jurisdiction and granted relief. The court noted that the newspaper conceded that the Sheriff's Office did not violate A.R.S. §§ 39–121 to –125 by removing it from its e-mail distribution list. Nevertheless, the court held, "A request for *all* future press releases is clear, unambiguous, and without undue burden on [the Sheriff's Office]. Moreover, such a prospective request is the only feasible way for a media outlet with time-sensitive deadlines to otherwise obtain press releases in a timely manner." (Emphasis in original.) [2]

¶ 5 The court ordered that when the Sheriff's Office issues a press release it must "contemporaneously" make the release available to the *West Valley View*, either by making it available for pickup or by mailing it "on the same date that the press release is is-

sued." The court, however, declined to grant *West Valley View's* request for attorney's fees pursuant to A.R.S. § 39–121.02(B) (2001).

¶ 6 The Sheriff's Office appeals the superior court's order on the merits and *West Valley View* cross-appeals from the denial of its request for attorney's fees.

## DISCUSSION

### I. THE APPEAL

**A. The Trial Court Did Not Abuse Its Discretion by Ordering the Sheriff's Office to Comply with the Public Records Request.**

¶ 7 After the superior court has accepted jurisdiction and determined the merits of a special action petition, "we review whether the court abused its discretion by its grant or denial of relief." *Ottaway v. Smith*, 210 Ariz. 490, 492, ¶ 5, 113 P.3d 1247, 1249 (App.2005).[3] We review *de novo* whether the denial of access to public records is wrongful. *Bolm v. Custodian of Records*, 193 Ariz. 35, 38, ¶ 7, 969 P.2d 200, 203 (App.1998). At the same time, we defer to any findings of fact by the superior court. *Phoenix Newspapers, Inc. v. Keegan*, 201 Ariz. 344, 347, ¶ 11, 35 P.3d 105, 108 (App.2001).[4]

¶ 8 The Sheriff's Office does not disagree that the press releases it issues are "public records" for purposes of A.R.S. §§ 39–121 to –125. *See Griffis v. Pinal County*, 215 Ariz. 1, 4, ¶ 8, 156 P.3d 418, 421

1. Pursuant to A.R.S. § 39–121.01(E), "Access to a public record is deemed denied if a custodian fails to promptly respond to a request for production of a public record[.]"

2. The newspaper offered evidence that other public agencies that regularly issue certain public records of interest make them available to the news media on an ongoing basis without requiring the media to specifically request each record as it is issued.

3. When a special action is authorized by a statute such as A.R.S. § 39–121.02(A), the issues that may be raised are not limited by the Rules of Procedure for Special Actions. *Primary Consultants, L.L.C. v. Maricopa County Recorder*, 210 Ariz. 393, 395 n. 1, ¶ 6, 111 P.3d 435, 437 n. 1 (App.2005).

4. The Sheriff's Office argues at length that the superior court abused its discretion in accepting special action jurisdiction pursuant to A.R.S. § 39–121.02(A), which provides that "[a]ny person who has requested to examine or copy public records pursuant to the provisions of this article, and who has been denied access to or the right to copy such records, may appeal the denial through a special action in the superior court...." The Sheriff's Office argues that this statute affords no relief to one such as the *West Valley View* that submits an ongoing request for copies of documents to be created in the future. Because we conclude to the contrary, *see infra* ¶¶ 9–19, we find the court did not abuse its discretion in accepting special action jurisdiction of the newspaper's complaint.

(2007) ("Arizona law defines 'public records' broadly and creates a presumption requiring the disclosure of public documents."); *In re Corwin, Solomon & Tanenbaum v. New York State Div. of Lottery*, 239 A.D.2d 763, 657 N.Y.S.2d 803, 804–05 (N.Y.App.Div.1997) (previously disseminated press releases relating to lottery winners were subject to disclosure). Nor does the Sheriff's Office contend the press releases contain private information, the disclosure of which would require application of "a balancing test to determine whether privacy, confidentiality, or the best interests of the state outweigh the policy in favor of disclosure." *Griffis*, 215 Ariz. at 5, ¶ 13, 156 P.3d at 422. Indeed, the very nature of a "press release" is that it be publicly disclosed and disseminated.

¶ 9 Nevertheless, the Sheriff's Office argues that the public record laws provide no basis for a continuing order to a public body to provide copies of documents to be issued in the future. During oral argument before this court, counsel for the Sheriff's Office conceded that the law would require the Sheriff to promptly furnish the *West Valley View* with a copy of any specific press release if the newspaper requested it *after the press release already had issued.* But the Sheriff's Office contends the public records laws provide no authority for an "ongoing" request for copies such as the request filed by the *West Valley View.* Thus, in the view of the Sheriff's Office, it may require a newspaper that has made known its desire to have copies of each press release issued by the Sheriff to somehow discover on its own that a press release has been issued and then make a separate formal request to the Sheriff for a copy of each such release. We disagree.

■■■ ¶ 10 The newspaper's request was made pursuant to A.R.S. § 39–121.01(D)(1), which states, "Any person may request to

examine or be *furnished copies,* printouts or photographs of any public record during regular office hours or may request that the custodian mail a copy of any public record not otherwise available on the public body's web site to the requesting person." (Emphasis added.) [5] The newspaper requested that it be "furnished copies" of news releases issued by the Sheriff's Office. In view of the presumption requiring disclosure that guides our application of Arizona's public records laws, *Griffis*, 215 Ariz. at 4, ¶ 8, 156 P.3d at 421, we do not construe section 39–121.01(D)(1) to require the submission of separate *seriatim* requests for copies of each successive record when what the requester wants is every record within a clearly articulated and defined category of records that a public agency creates over time. [6]

¶ 11 Although courts are generally hesitant to order a defendant to obey a law in the future, we observe that courts in other jurisdictions have granted prospective relief under state public records laws. For example, in *State ex rel. Consumer News Services, Inc. v. Worthington City Board of Education*, 97 Ohio St.3d 58, 776 N.E.2d 82 (2002), the court was presented with a request that an agency "produce public records in the future without delay." *Id.* at 88, ¶ 28 (emphasis omitted). The court noted that mandamus usually does not issue "to compel the general observance of laws in the future," *id.* at ¶ 33, but granted relief in the face of the agency's proven repeated practice of untimely production of records under the Ohio public records statute, *id.* at 91, ¶¶ 50–51.

¶ 12 In *Howard v. Sumter Free Press, Inc.*, 272 Ga. 521, 531 S.E.2d 698 (2000), the Georgia Supreme Court affirmed the use of mandamus to enforce a newspaper's request for public records. A county sheriff had denied the newspaper access to all public

---

5. According to the record, the Sheriff's Office does not routinely post all of its press releases on its website.

6. The Sheriff's Office argues, without authority, that the superior court's decision "amounted to an advisory opinion." An advisory opinion is "anticipative of troubles which do not exist; may never exist; and the precise form of which, should they ever arise, we cannot predict." *Velasco v. Mallory,* 5 Ariz.App. 406, 410–11, 427

P.2d 540, 544–45 (1967). In light of the Sheriff's Office's refusal to respond to the newspaper's two letter requests, it was reasonable for the superior court to conclude that the Sheriff likely would deny future repeated requests by the newspaper. We also note that at no time during this litigation has the Sheriff's Office volunteered that it would honor the newspaper's prospective requests for copies of press releases.

records created and maintained by his office, and the newspaper sued for mandamus to compel the sheriff to comply with the state's Open Records Act. *Id.* at 698 (citing Ga.Code Ann. § 50–18–70 *et seq.*). The lower court granted mandamus after it found the sheriff had withheld information because the newspaper had published articles critical of him and his family members. *Id.* at 699. Similar to the case at bar, the court in *Howard* also credited evidence that the sheriff had "regularly provided other members of the news media the information denied to the [newspaper]." *Id.*

¶ 13 On appeal, the Georgia Supreme Court affirmed, explaining:

> It is true, as [the sheriff] maintains, that the Act applies to existing records in that no public officer or agency is required to prepare reports, summaries, or compilations not in existence at the time of the open records request. OCGA § 50–18–70(d). But, the evidence in this case was that the documents at issue were generated on an ongoing basis and that the newspaper's requests for access to the documents were continuing.

*Id.*[7]

¶ 14 The same reasoning applies here in the face of the Sheriff's Office's persistent refusal to reinstate the *West Valley View* to its e-mail distribution list and its insistence that it need not provide the newspaper copies of press releases unless the newspaper asks for them, one by one, after each has been issued. We agree with the superior court that under these circumstances, section 39–121.01(D) requires the Sheriff's Office to comply with the newspaper's ongoing request for copies of news releases as they are issued. We further agree with the commonsense observation of the superior court that "a prospective request is the only feasible way for a media outlet with time-sensitive deadlines to otherwise obtain press releases in a timely manner."

¶ 15 The Sheriff's Office vigorously contends that the superior court "rewrote" section 39–121.01 by ordering that the Sheriff provide copies of future press releases to the newspaper. To the contrary, we see nothing in the statute that precludes an ongoing request for disclosure of a narrowly defined, clearly identifiable category of to-be-created documents that the public agency concedes are public records.

¶ 16 The Sheriff's Office argues that because the statutes refer to "custody" or a "custodian" of public records, it therefore cannot apply to documents that have yet to be created because one cannot have "custody" of a document that does not yet exist. *See* A.R.S. §§ 39–121 ("Public records ... in the custody of any officer shall be open to inspection by any person at all times during office hours."); 39–121.02(D) ("[T]he custodian of such records shall promptly furnish such copies...."). In the absence of statutory definitions of "custody" and "custodian," we accord the words their ordinary meaning. A.R.S. § 1–213 (2002). According to *Black's Law Dictionary*, "custody" means "[t]he care and control of a thing or person for inspection, preservation, or security." *Black's Law Dictionary* 412 (8th ed.2004). Under this definition, the Sheriff's Office has "care and control" of press releases as they are created and thereafter.

¶ 17 The Sheriff's Office argues strenuously that it cannot be compelled to produce a copy of a document "not yet in existence at the time of the request," as if the court's mandate imposed on it some impossible existential duty. We disagree. The only obligation imposed by the superior court's order is one that ripens upon the creation of each future press release. Once it creates a press release, the Sheriff's Office is required to provide the *West Valley View* with a copy after the release is distributed to other news media.

---

7. *See also State v. Harder*, 230 Kan. 573, 641 P.2d 366 (1982) (reversing trial court's order denying disclosure of medical record statistical information; "requests were continuing ones"). *See generally Ctr. for Econ. Justice v. Am. Ins. Ass'n*, 39 S.W.3d 337, 342–43, 349 (Tex.Ct.App. 2001) (analyzing open-ended, continuing request under public information act for data as it became available). *Cf. Robot Aided Mfg., Inc. v. Moore*, 589 N.W.2d 187, 192 (N.D.1999) (affirming, without discussion on this point, trial court's order requiring party that sought ongoing disclosure of traffic violation records to "periodically submit written requests for specific records").

¶ 18 Moreover, we reject the contention of the Sheriff's Office that the court's order that it furnish the newspaper with copies of releases it distributes to other media puts the Sheriff's Office "at risk and peril to interpret that demand on an ongoing basis." As the superior court held, "[a] request for *all* future press releases is clear, unambiguous, and without undue burden" on the Sheriff's Office. Although the *West Valley View* originally had sought a more limited range of press releases—those pertaining only to West Valley crime—in response to the argument that the Sheriff's Office should not have to bother to determine which releases concern the West Valley, the newspaper revised its request and instead asked for copies of *all* press releases, regardless of subject matter.

¶ 19 That issue aside, the Sheriff's Office does not contend on appeal that it has any difficulty discerning which of its communications with news media are "press releases," for purposes of the court's order, and which are not. Thus, this case does not present more difficult questions that might be implicated by a request, for example, for documents received or created in the future relating to any crime occurring at a particular address or involving any one of a number of specified individuals. To the contrary, the newspaper's request for press releases only seeks copies of a single easily defined and identifiable category of documents that the public agency admittedly regularly generates.

**B. The Superior Court's Order Reasonably Applies the Statutory Requirement that Documents Must Be Furnished "Promptly."**

■ ¶ 20 Recognizing that A.R.S. § 39–121.01(D)(1) requires the public agency to "promptly furnish" copies of records subject to the statute, the superior court ordered that "when [the Sheriff's Office] issues a

press release, it must contemporaneously make that document available" to *West Valley View* by making the document available for pickup by the newspaper or by mailing it to the newspaper "on the same date that the press release is issued." The Sheriff's Office complains that the same-day requirement that the superior court imposed is too strict an interpretation of the statutory requirement that it "promptly furnish" the press releases to the newspaper.

¶ 21 Because the statute does not define "promptly" we turn again to a dictionary, which defines "prompt" to mean "quick to act or to do what is required" or "done, spoken, etc. at once or without delay." *Webster's New World Dictionary* 1137 (2d ed.1980). Under the circumstances, we cannot conclude that the superior court abused its discretion by requiring the Sheriff's Office to mail or make available press releases to the *West Valley View* "at once or without delay," that is, on the same day that it distributes them to other news media by way of e-mail. This is so particularly because the Sheriff's Office does not argue that it would be prejudiced or even inconvenienced by complying with the court's order. *See Star Publ'g Co. v. Parks*, 178 Ariz. 604, 605, 875 P.2d 837, 838 (App. 1993) (delay of a month in furnishing public records was not permitted because public entity could not point to specific risks of timely disclosure).[8]

**II. THE CROSS–APPEAL**

■ ¶ 22 As noted, although the superior court granted *West Valley View* the substantive relief it sought, it declined to award the newspaper its attorney's fees pursuant to A.R.S. § 39–121.02(B). As it existed at the time the newspaper filed its special action, the fees statute provided:

> If the court determines that a person was wrongfully denied access to or the right to copy a public record and if the court finds

8. We note that in *Worthington*, the Ohio Supreme Court refused to require the agency to provide ongoing public records "without delay." 776 N.E.2d at 91, ¶ 51. At issue there, however, were a wide variety of document requests, and the court concluded that "access to public records will ultimately be dependent upon the facts and circumstances of each request." *Id.* Under those circumstances, the court understandably was unwilling to impose a blanket "without delay" requirement on the future provision of records. By contrast, the newspaper's request in this case was for a single category of documents that, by definition, are available for immediate production (because they already have been distributed to other news media).

that the custodian of such public record acted in bad faith, or in an arbitrary or capricious manner, the superior court may award to the petitioner legal costs, including reasonable attorney fees, as determined by the court.

A.R.S. § 39–121.02(B).[9]

¶ 23 In explaining its decision, the superior court stated:

It would obviously be simpler, more professional, and less costly for all involved (including Maricopa County taxpayers) for the [Sheriff's Office] to, with a few keystrokes, add the *West Valley View* to its e-mail distribution list. Although the [Sheriff's Office's] refusal to do so appears petty, the court cannot find that its legal position regarding the validity of [the newspaper's] prospective public records requests was arbitrary, capricious, or in bad faith.

¶ 24 *West Valley View* argues that we should reverse the superior court's finding that the Sheriff's Office did not act arbitrarily, capriciously or in bad faith in deciding to punish the newspaper by wrongfully refusing to respond to the newspaper's ongoing requests for copies of news releases.

¶ 25 Because we review the court's decision for abuse of discretion, *Cox Ariz. Publ'ns Inc. v. Collins,* 175 Ariz. 11, 14, 852 P.2d 1194, 1198 (1993), we must uphold its findings unless they are clearly erroneous, *KPNX–TV v. Superior Court,* 183 Ariz. 589, 594, 905 P.2d 598, 603 (App.1995). In reviewing the superior court's order, we note the cases relied upon by the Sheriff's Office in which the courts have denied attorney's fees under section 39–121.01(B) when "there is room for two opinions" concerning the legal validity of the public records request at issue. *Ariz. Bd. of Regents v. Phoenix Newspapers, Inc.,* 167 Ariz. 254, 259, 806 P.2d 348, 353 (1991) (quoting *Tucson Public Schs. v. Green,* 17 Ariz.App. 91, 94, 495 P.2d 861, 864 (1972)); *see also Bolm,* 193 Ariz. at 41, ¶¶ 15–16, 969 P.2d at 206 (reversing fees grant in "the absence of any controlling Arizona authority

previously addressing" legal issue posed by records request).

¶ 26 These cases do not, however, teach that a public agency that has rejected a records request may avoid a fees award simply by arguing the request was unsupported by specific controlling legal authority. In *Bolm,* for example, the court's holding that the City of Tucson had not acted arbitrarily, capriciously or in bad faith was based in large part on the City's substantial efforts to comply with its disclosure obligations. 193 Ariz. at 41, ¶¶ 15–18, 969 P.2d at 206. The City in that case "reviewed the requested materials," produced some of the requested records, provided a list of the records it was withholding and submitted the remaining records to the court for *in camera* review. *Id.* at ¶ 15. Accordingly, while the court noted an absence of "controlling Arizona authority" on the disclosure question presented, in reversing a fees award against the City the court plainly also was influenced by the City's obvious good-faith efforts to comply with the statute. *Id.*

¶ 27 Neither does the *Arizona Board of Regents* case provide assistance to the Sheriff's Office's attempt to avoid a fees award in this matter. At issue there was a request for the names of 256 individuals under consideration to replace the outgoing president of Arizona State University. 167 Ariz. at 256, 806 P.2d at 350. In defending its decision to decline to disclose the names to the press, the Board of Regents offered evidence that when the names of candidates for such a search became public, the number of applicants is reduced by a fourth. *Id.* at 255, 806 P.2d at 349. Our supreme court held that under the circumstances, the Board "had the discretion to balance the countervailing interests" against disclosure, given that "confidentiality was critical" in the decision by some "well-qualified candidates" to be interviewed. *Id.* at 257–58, 806 P.2d at 351–52. Thus, the Board's decision to withhold the names was based on a reasonable conclusion "that the welfare of the university required that the

---

9. The statute was amended in 2006 to permit the court to award reasonable fees and costs "if the person seeking public records has substantially prevailed." A.R.S. § 39–121.02(B) (Supp.2006).

In neither the superior court nor on appeal did *West Valley View* argue that the amended statute governed its request for attorney's fees.

list of names be held in confidence." *Id.* at 259, 806 P.2d at 353.[10]

¶ 28 The Sheriff's Office's conduct in response to the records requests by the *West Valley View* bears no resemblance to the good-faith responses of the public agencies in the cases on which it relies. The record fully supports the superior court's observation that the refusal of the Sheriff's Office to reinstate the newspaper to its list of e-mail news release recipients was "petty." More than that, the decision by the Sheriff's Office to remove the newspaper from its e-mail list because it did not care for the coverage the newspaper provided was without a doubt arbitrary and capricious.

¶ 29 At issue here, however, is not the Sheriff's Office's initial removal of the newspaper from its e-mail list but its refusal to grant the newspaper's ongoing request for copies of news releases routinely sent to a large group of other media. We conclude that the Sheriff's Office's utter refusal to respond to the newspaper's ongoing requests for copies of news releases and its stubborn persistence in its position that it need not comply with the requests was "in bad faith" or "arbitrary or capricious" within the meaning of section 39–121.02(B).

¶ 30 Unlike the good faith of the agencies in *Arizona Board of Regents* and *Bolm,* the Sheriff's Office's conduct here is more akin to that of the county attorney at issue in *Cox Arizona Publications.* That case arose out of a request for disclosure of reports of an ongoing criminal investigation into a handful of professional athletes. *Cox,* 175 Ariz. at 12, 852 P.2d at 1196. Our supreme court reversed this court's decision vacating an attorney's fees award in favor of the members of the press that had sought the records. *Id.* Like the Sheriff in this case, the county attorney in that case did not dispute that the documents sought were "public records" within the meaning of the statute, and offered only "global generalities" in an attempt

to satisfy his burden "to overcome the legal presumption favoring disclosure." *Id.* at 14, 852 P.2d at 1198.

¶ 31 The Sheriff's Office, of course, has made no argument that the documents at issue here were privileged. Nor did the Sheriff offer any principled reason why it might be difficult or disruptive for his office to comply with the newspaper's request. Instead, by all the evidence, the Sheriff's Office refused the requests at issue simply because it did not care to accede to the newspaper's expressed request to receive copies of what the Sheriff routinely provides to a large group of other media members. We hold that under these circumstances, as in *Cox,* the Sheriff's Office acted arbitrarily or capriciously or in bad faith in declining the requests of the *West Valley View. See id.* at 15, 852 P.2d at 1199 (public official "decided on his own what to release and when to release it"; "Having set himself up as sole judge and jury, [the official] took the chance that his decision would be viewed as arbitrary and capricious. He cannot now complain.").

¶ 32 Because the refusal by the Sheriff's Office to grant West Valley View's records request was arbitrary, capricious or in bad faith, the superior court had the discretion to award the newspaper its legal costs and reasonable attorney's fees, pursuant to A.R.S. § 39–121.02(B).

## CONCLUSION

¶ 33 For the reasons stated above, the superior court properly applied A.R.S. § 39–121.01 in ordering prospective relief under the circumstances presented by this case. However, we vacate that portion of the superior court's order denying attorney's fees to *West Valley View* pursuant to A.R.S. § 39–121.02(B), and remand for proceedings consistent with this decision. We award the newspaper its costs on appeal and grant its request for attorney's fees on appeal pursu-

---

10. The Sheriff's Office also cites *Primary Consultants,* but in that case this court denied fees under A.R.S. § 39–121.02(B) after noting that the party seeking the records could cite no bad faith actions by the public agency that received the records request. 210 Ariz. at 400–01, ¶ 30, 111 P.3d at 442–43.

ant to Arizona Rule of Civil Appellate Procedure 21(c).

CONCURRING: LAWRENCE F. WINTHROP and PHILIP HALL, Judges.

