NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

PHILLIP POTTER, *Plaintiff/Appellant*,

*v.*

ARIZONA HOUSE OF REPRESENTATIVES, et al., *Defendants/Appellees*.

No. 1 CA-CV 23-0213
FILED 2-1-2024

---

Appeal from the Superior Court in Maricopa County
No. CV2022-008626
The Honorable Connie Contes, Judge (retired)
The Honorable John L. Blanchard, Judge

**AFFIRMED**

---

COUNSEL

Phillip Potter, Scottsdale
*Plaintiff/Appellant*

Gallagher & Kennedy, P.A., Phoenix
By Kevin E. O'Malley & Hannah H. Porter
*Co-Counsel for Defendant/Appellee Arizona House of Representatives*

Snell & Wilmer, L.L.P., Phoenix
By Brett W. Johnson & Derek C. Flint
*Co-Counsel for Defendant/Appellee Karin Taylor Robson*

The Nelson Law Group, PLLC, Phoenix
By Tim Nelson
*Counsel for Defendant/Appellee Robert Meza*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Maria Elena Cruz and Judge Cynthia J. Bailey joined.

---

**M c M U R D I E**, Judge:

¶1 Phillip Potter appeals the superior court's dismissal of his public records special action. He also appeals the court's vexatious litigant ruling and the attorney's fees award. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 In 2022, Potter submitted a public records request to the Arizona House of Representatives ("the House") and State Representative Robert Meza ("Meza") seeking records mainly about Meza's involvement with two nonprofit organizations, Open Hearts Family Wellness and The Arouet Foundation, and their respective events held in 2020 and 2021.

¶3 The House responded the next day to clarify the scope of the search. Soon after, the House communicated to Potter it would "turn [its] attention to searching and processing any responsive records." The next month, the House's public records counsel confirmed it had forwarded the request to Meza to conduct his own search. The House produced four document sets between June 9 and July 21. Potter does not dispute this.

Separately, Meza searched his phone and found no responsive public records.

¶4         On June 21, Potter sent Karrin Taylor Robson ("Robson") a public records request for "records generated through interactions and communications between [herself] and State Representative Robert Meza." Robson, through counsel, responded that she is a private citizen, not subject to the request, and thus did not maintain responsive records.

¶5         On June 29, Potter sent the House and Robson a letter requesting confirmation that they would produce the requested documents. Potter warned that if he did not receive an acknowledgment within two days, he would "assume that the non-responding party(ies) have chosen not to comply with the public records request." They did not respond to the letter.

¶6         On July 8, Potter filed a special action against the House, Meza, and Robson ("Defendants") under A.R.S. § 39-121.02 to compel the production of public records. He also moved for an order to show cause why the relief sought should not be granted. The court held a show cause hearing and granted the show cause motion. Potter also moved for *in camera* inspection of disputed records.

¶7         Two months later, Robson produced records of her email exchanges and an affidavit attesting she had produced her responsive records. She attested, "Although I do not believe the correspondence I have with Mr. Meza qualifies as a public record, I . . . provide them herein to avoid further involvement or expense in this matter." Robson also requested that she be voluntarily dismissed from the matter, which Potter declined. Defendants maintain that although Robson is not subject to the public records law, the production was an "[attempt] to placate Plaintiff and avoid the expense of litigation."

¶8         Meza searched his personal computer. The search yielded two potentially responsive documents, letters to elected officials about a charity event, which Meza produced. He also provided an affidavit attesting that his search was complete, and he maintained no other responsive public records.

¶9         On September 15, each defendant moved to dismiss the suit. The House argued it produced all the documents in its custody and had no duty to seize, search, and produce records from the other defendants. Robson contended that Potter lacked standing or a claim against her because she is a private citizen not subject to the public records law. And

Meza argued the complaint was not ripe because the parties were still producing documents when Potter filed suit. Each defendant asserted the case was moot. Shortly after, Potter applied for another order to show cause.

¶10       On November 16, the court held an oral argument on the motions to dismiss. The court granted Defendants' motions to dismiss and denied Potter's motion for *in camera* inspection of the disputed records and his second application for order to show cause. Potter filed a motion for reconsideration, which the court denied.

¶11       Defendants jointly moved to designate Potter as a vexatious litigant under A.R.S. § 12-3201, alleging the frivolous nature of this case and Potter's past cases. Potter moved to dismiss the vexatious litigant motion, which the court denied.

¶12       Defendants moved for attorney's fees as sanctions under A.R.S. §§ 12-349, 12-350. Robson also filed an Arizona Rule of Civil Procedure ("Rule") 11 motion for sanctions. The court granted each motion.

¶13       Potter moved for a temporary restraining order to retain Defendants' records. The court denied the motion because it had dismissed the action.

¶14       In February 2023, the court held an evidentiary hearing on the motion to designate Potter as a vexatious litigant. It granted the motion and found Potter "engaged in vexatious conduct per [A.R.S.] § 12-3201 by: repeated filing of court actions without substantial justification; and repeatedly filing documents or requests for relief that have been the subject of previous rulings by the court in similar litigation." The court prohibited Potter from "fil[ing] any new pleading, motion or other document in this case or any other pending civil action without prior leave of the judge assigned to that case."

¶15       Potter appealed, and we have jurisdiction under A.R.S. §§ 12-2101(A)(1), 12-2101(A)(5)(b), and 12-120.21(A)(1).

## DISCUSSION

**A.     The Superior Court Correctly Dismissed Potter's Claims Under Rule 12(b)(6).**

¶16       We review the dismissal of a complaint under Rule 12(b)(6) *de novo. Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012). Dismissal is

appropriate under Rule 12(b)(6) only if "as a matter of law plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *Coleman*, 230 Ariz. at 356, ¶ 8 (cleaned up). "When adjudicating a Rule 12(b)(6) motion to dismiss, Arizona courts look only to the pleading itself and consider the well-pled factual allegations contained therein." *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008). Courts must "assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts, but mere conclusory statements are insufficient." *Coleman*, 230 Ariz. at 356, ¶ 9.

**¶17**        Potter contends the superior court erred by granting Defendants' motions to dismiss. He maintains he has arguable claims against each defendant because Defendants' record searches and productions did not comply with the public records law. A.R.S. § 39-121.02(A) provides:

> Any person who has requested to examine or copy public records pursuant to this article, and who has been denied access . . . may appeal the denial through a special action in the superior court, pursuant to the rules of procedure for special actions against the officer or public body.

**1.        The Superior Court Did Not Err by Dismissing the Claims Against Meza.**

**¶18**        Potter asserts that Meza's search was insufficient because he withheld public records subject to Potter's request. Our supreme court has articulated these three definitions of public records:

> (1) a record made by a public officer in pursuance of a duty, the immediate purpose of which is to disseminate information to the public; (2) a record required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law or directed by law to serve as a memorial and evidence of something written, said or done; or (3) any written record of transactions of a public officer in his office, which is a convenient and appropriate method of discharging his duties, and is kept by him as such, whether required by law or not.

*Lunney v. State*, 244 Ariz. 170, 174, ¶ 8 (App. 2017) (cleaned up) (citing *Mathews v. Pyle*, 75 Ariz. 76, 78-79 (1952)). Each definition focuses on records relating to public officials' duties. *See id.* Thus, our supreme court has held

that only documents "with a 'substantial nexus' to government activities qualify as public records, and the nature and purpose of a document determine whether it is a public record." *Lake v. City of Phoenix*, 222 Ariz. 547, 549, ¶ 8 (2009). "The public is not entitled to a public [officer's] purely personal records," and the officer's mere possession of a document does not alone make the document a public record. *Lunney*, 244 Ariz. at 178, ¶ 27; *Griffis v. Pinal County*, 215 Ariz. 1, 4, ¶ 11 (2007). Moreover, "[a]lthough the public records law creates a strong presumption in favor of disclosure, that presumption applies only when a document first qualifies as a public record." *Griffis*, 215 Ariz. at 5, ¶ 12.

¶19 Potter's requested records concern Meza's communications with private charitable organizations about their events. Potter alleged that he "has reason to believe Representative Meza and Mrs. Taylor Robson are in possession of public records they have chosen to withhold in violation of the PRL." He "requested to inspect records held by the House and Representative Meza regarding, *inter alia*, Representative Meza's promotion of, and involvement with, events Open Hearts Family Wellness and The Arouet Foundation conducted in February 2020 and May 2021, respectively." He asserted that Meza "organized, solicited sponsorships, appeared, and spoke under his Officer title" at fundraising events for Open Hearts Family Wellness and The Arouet Foundation. And he contended the events required "significant planning that would generate public records."

¶20 But Potter failed to allege how the requested records have a "substantial nexus" with government activity. *See Lunney*, 244 Ariz. at 174, ¶ 8. A legislator's private involvement in private charitable events would not generate public records without some showing that the legislator transacted government activities or discharged governmental duties during the event. *See Lake*, 222 Ariz. at 549, ¶ 8; *Lunney*, 244 Ariz. at 174, ¶ 8. Defendants stated in the dismissal hearing that the events were "private charitable event[s] that high-profile people happened to support . . . there was no legislative function being conducted." And Potter does not sufficiently allege that Meza's involvement with the charitable organizations bore a connection to his legislative duties. Instead, he makes bare legal conclusions alleging corruption, which cannot withstand a Rule 12(b)(6) motion. *See Coleman*, 230 Ariz. at 356, ¶ 9.

¶21 Because public records do not encompass records of a purely private nature, *see Griffis*, 215 Ariz. at 4, ¶ 10, Potter's claim against Meza fails under Rule 12(b)(6).

### 2. The Superior Court Did Not Err by Dismissing the Claims Against Robson.

**¶22** Potter argues that Robson is subject to public records litigation. Defendants respond that Robson is a private citizen, so the court did not err by dismissing the claims against her.

**¶23** Special actions under A.R.S. § 39-121.02(A) are limited to suits against an "officer or public body." And the inspection of public records is limited to records "in the custody of any *officer*." A.R.S. § 39-121 (emphasis added). An "[o]fficer" is "any person elected or appointed to hold any elective or appointive office of any public body and any chief administrative officer, head, director, superintendent or chairman of any public body." A.R.S. § 39-121.01(A)(1). Moreover, the purpose of the public records law "is to open *government* activity to public scrutiny, not to disclose information about private citizens." *Griffis*, 215 Ariz. at 4, ¶ 11.

**¶24** Potter claims it is disingenuous for Robson to call herself a private citizen because she was an elected member of the Arizona Board of Regents from 2017 through 2021, when the requested records were created, and a candidate for office when Potter filed the special action. He contends "her status as a state actor and public figure survived her Arizona Board of Regents resignation and primary election loss" but provides no support for this proposition. Further, her candidacy for governor is not relevant, as an officer must be a person either "elected or appointed," not merely a candidate. *See* A.R.S. § 39-121.01(A)(1).

**¶25** Potter requested records from Robson and filed suit in 2022 after she had resigned from the Arizona Board of Regents. In 2022, Robson was neither an appointed board member nor an elected official. Rather, she was a private citizen and thus not an "officer." *See* A.R.S. § 39-121.01(A)(1). Because a person can only bring suit under A.R.S. § 39-121.02(A) against an "officer or public body," Potter failed to state a claim against Robson on which relief can be granted. *See* Ariz. R. Civ. P. 12(b)(6).

**¶26** Potter also argues that regardless of Robson's status as a private citizen, she is subject to the public records law as a records custodian. He fails to explain what makes Robson a custodian but contends she has custodial duties.

**¶27** To be sure, custodians have duties to produce public records. *See* A.R.S. § 39-121.01(D). But the Freedom of Information Act ("FOIA") caselaw informs that "custodian" seldom encompasses private citizens. *See Phoenix New Times, L.L.C. v. Arpaio*, 217 Ariz. 533, 539, ¶ 15, n.3 (App. 2008)

("When interpreting Arizona's public records statutes, it is appropriate to look to FOIA for guidance."). "[T]here is no authority in the FOIA or Privacy Act obligating non-government organizations or private individuals to maintain or make available documents to the public." *Germosen v. Cox*, No. 98 Civ. 1294(BSJ), 1999 WL 1021559, at *20 (S.D.N.Y. Nov. 9, 1999) (mem. decision); *see also Buemi v. Lewis*, No. 94-4156, 1995 WL 149107, at *2 (6th Cir. Apr. 4, 1995) (mem. decision) ("The Act applies only to federal agencies . . . not to cities and private individuals."). And as Defendants correctly point out, if we were to follow Potter's sweeping definition of "custodian," any private citizen who communicates with a public officer would be subject to a host of public records law requirements. We decline to do so.

¶28        Potter misplaces reliance on *Fann* to argue that this is an exceptional case in which a private entity must produce public records. *See Fann v. Kemp*, 1 CA-SA 21-0141, 2021 WL 3674157 (Ariz. App. Aug. 19, 2021) (mem. decision). In *Fann*, the Senate contracted with a private company to perform an election audit, an "important legislative function." *Id.* at *1, ¶ 2, *5, ¶ 24. The private company was an undisputed "authorized agent" of the Senate. *Id.* at *4, ¶ 19, n.1. But here, Robson did not have a contractual or agency relationship with Meza or the House, nor was she performing an "important legislative function." *See id.* at *1, ¶ 2, *5, ¶ 24. Rather, as Potter detailed in his complaint, he requested records from Robson "regarding Representative Meza's involvement in securing [Robson's] 'agreement, preparation, and performance' as the 'Honorary Chairwoman' for the May 2021 Arouet Foundation event and as the 'Event Host' for the February 2020 Open Hearts Family Wellness event." Potter failed to explain how Robson's actions as a charitable event organizer served an important legislative function. *Cf. id.* at *4, ¶ 19 (The election audit is an important public function and official legislative activity.). *Fann* does not apply because it determined a public body's duty to produce records, not a private party's duty. *See id.* at *1, ¶ 1.

¶29        Potter's reliance on *Cyber Ninjas, Inc. v. Hannah*, 1 CA-SA 21-0173, 2021 WL 5183944 (Ariz. App. Nov. 9, 2021) (mem. decision), is also misplaced. In *Cyber Ninjas*, the Arizona Republic, published by Phoenix Newspapers, Inc. ("PNI"), served a request on private company Cyber Ninjas to inspect its audit-related documents and later filed a public records special action. *Id.* at *1, ¶¶ 2-4. This court held that although Cyber Ninjas is not an "officer" or "public body," PNI "may obtain relief against Cyber Ninjas under the PRL because Cyber Ninjas is the sole 'custodian' of documents that are public records subject to disclosure under the PRL." *Id.* at *2-3, ¶¶ 12-13. We stated, "To the extent Cyber Ninjas is in sole

possession of audit-related public records because of its contract with the Senate, Cyber Ninjas has become the custodian of those records under the PRL." *Id.* at *2-3, ¶ 15. We also explained, "Cyber Ninjas was properly joined as a necessary party in PNI's special action because, even though it is a private company, as a contractor and agent of the Senate, it is alleged to be the sole custodian of records pertaining to the audit that are subject to disclosure under the PRL." *Id.* at *3, ¶ 17.

**¶30**      *Cyber Ninjas*' facts are not like those before us. Potter did not allege that Robson is in sole possession of public records. Nor did he allege that Robson has a contractual or agency relationship with Meza or the House. And as discussed above, he did not sufficiently allege that the records at issue are subject to public records law. Thus, the facts that made Cyber Ninjas a custodian of records are not alleged here, and so joinder of a sole custodian is not at issue.

### 3.    The Superior Court Did Not Err by Dismissing the Claims Against the House.

**¶31**      Potter argues the House's search was inadequate because the House limited its search to its email servers and failed to secure other records in Meza's and Robson's possession. Defendants respond that the House does not have a duty to seize materials held by officers or private individuals. We agree with Defendants.

**¶32**      "Each public body shall be responsible for the preservation, maintenance and care of *that body's* public records, and each officer shall be responsible for the preservation, maintenance and care of *that officer's* public records." A.R.S. § 39-121.01(C) (emphasis added). "[O]fficers and public bodies are under *independent* obligations to record their work and otherwise maintain records." Op. Ariz. Att'y Gen. I17-004 (July 7, 2017) (emphasis added). Further, inspection of public records is limited to those "in the custody of any officer." A.R.S. § 39-121; *see also Phoenix New Times*, 215 Ariz. at 540, ¶ 22 (A public body's "burden under the public records law is to provide access to public records that are in its custody."). Thus, a public body does not have to maintain records other than its own and must only produce records within its custody. A.R.S. §§ 39-121.01(C), 39-121. "Custody" means "the care and control of a thing or person for inspection, preservation, or security." *West Valley View, Inc. v. Maricopa County Sheriff's Off.*, 216 Ariz. 225, 229, ¶ 16 (App. 2007) (cleaned up). And constructive custody exists where a body "has the right to control the records, either directly or through another person." *See Fann*, 1 CA-SA 21-0141, at *4, ¶ 22.

9

¶33 Here, the House searched and produced four sets of records. The House did not have a duty to obtain records from Robson because her documents as a private citizen were not in the House's "care and control." *See West Valley View, Inc.*, 216 Ariz. at 229, ¶ 16; *see also Phoenix New Times*, 215 Ariz. at 540, ¶ 22. Nor did the House have the right to control Robson's records, as they did not have an agency relationship. *See, e.g., Fann*, 1 CA-SA 21-0141, at *4, ¶¶ 22-23. Thus, the House did not have the actual or constructive custody of Robson's records required to trigger a duty. *See West Valley View, Inc.*, 216 Ariz. at 229, ¶ 16; *Fann*, 1 CA-SA 21-0141, at *4, ¶ 22; A.R.S. § 39-121. And as Defendants submit, Plaintiff's position "would put the House in an impossible duty to maintain documents on devices that it has no control over."

¶34 The House also did not have a duty to maintain or produce records solely in Meza's custody. *See* A.R.S. §§ 39-121.01(C), 39-121. The House produced the responsive documents for Meza that were in its custody. The House did not have actual or constructive possession over how Meza maintained records on his personal devices. *See West Valley View, Inc.*, 216 Ariz. at 229, ¶ 16; *Fann*, 1 CA-SA 21-0141, at *4, ¶ 22; *see also* Op. Ariz. Att'y Gen. I17-004 ("[A]n agency does not have control of private electronic devices.").

¶35 More importantly, Potter did not sufficiently allege that the records he requested from the House were public records. *See Lake*, 222 Ariz. at 549, ¶ 8. Whatever the House's production duties, they are limited to public records. *See* A.R.S. §§ 39-121, 39-121.01(B). Thus, Potter's claim against the House fails. *See* Ariz. R. Civ. P. 12(b)(6).

### 4. Potter's Claims Against Defendants Are Moot.

¶36 The parties also contest whether the claims are now moot. Potter argues that the case was improperly dismissed because his claims did not become moot. Defendants respond that Potter's claims were moot because they produced all responsive public records in their possession.

¶37 To argue mootness, Robson and Meza rely on their affidavits attesting that they produced all responsive documents in their possession. If a party presents matters outside the pleadings to the court in a Rule 12(b)(6) motion and the material is not excluded by the court, "the motion must be treated as one for summary judgment under Rule 56." Ariz. R. Civ. P. 12(d); *see* Ariz. R. Civ. P. 56. Because Defendants' affidavits are outside the pleadings and the court did not exclude them, we review the motion to dismiss as one for summary judgment. *Coleman*, 230 Ariz. at 356, ¶ 9. Thus,

the correct inquiry is whether there were genuine issues of material fact about the claims' mootness. *See Frey v. Stoneman* 150 Ariz. 106, 109 (1986).

**¶38**        Although Defendants have the initial burden to show they adequately searched for responsive records, they can discharge their burden through "affidavits or declarations that provide reasonable detail of the scope of the search." *See Hodai v. City of Tucson*, 239 Ariz. 34, 44, ¶ 30 (App. 2016) (citations omitted). Defendants Meza and Robson submitted affidavits with their motions to dismiss and declared that they produced their responsive records. Meza's affidavit stated he had "no other public records responsive to Mr. Potter's public records request in [his] personal files." Potter provided no contrary evidence to rebut Defendants' attestations.

**¶39**        Other jurisdictions have recognized that a public records suit is moot once the requested records are produced. *See, e.g.*, *Crooker v. U.S. State Dep't*, 628 F.2d 9, 10 (D.C. Cir. 1980) ("Once the records are produced the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made."); *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1103 (9th Cir. 2016) ("[A]fter the agency produces all non-exempt documents . . . the specific FOIA claim is moot because the injury has been remedied."). To argue that the claims are not moot, Potter asserts that "a defendant cannot by its own voluntary conduct 'moot' a case." *See Pointe Resorts, Inc. v. Culbertson*, 158 Ariz. 137, 141 (1988). Potter is correct that whether a case is moot is the court's decision, not the parties'. Mootness is a matter of judicial discretion. *See id.* Because there is no issue of material fact about whether Defendants discharged their duties under the public records law, we find Potter's claims moot.

**¶40**        Because Potter failed to state a claim against each Defendant, and because the claims are now moot, we need not decide whether they were ripe.

**B.        The Superior Court Did Not Err by Denying Discovery and *In Camera* Review.**

**¶41**        Potter contends that the court had to grant discovery and allow for *in camera* review of the requested records. Potter's argument relies on *Griffis*, 215 Ariz. at 2-3, ¶ 1. He properly cites *Griffis'* instruction that "[w]hen the facts of a particular case raise a substantial question as to the threshold determination of whether the document is subject to the statute, the court must first determine whether that document is a public record."

*Id.* at 5, ¶ 13 (cleaned up). If there is a substantial question, the court may need to conduct an *in camera* review. *See id.* at 5, ¶¶ 13-15.

**¶42**    But here, Potter has not raised a "substantial question" about whether the documents are public records. As detailed above, his complaint lacked well-pled allegations that the records have a substantial nexus with government activities. *See Lake*, 222 Ariz. 547, 549, ¶ 8 (2009). The inquiry ends there because such an allegation must create a substantial question on whether the records fall under public records law. The court did not err.

### C.    The Superior Court Did Not Err by Denying Potter His Costs.

**¶43**    Potter claims the superior court erred by denying him costs because he prevailed when Defendants produced records. We note that Potter only requested costs in his response to Robson's motion to dismiss but not in his responses to the other defendants' motions. Still, the public records law provides that the court "*may* award attorney fees and other legal costs that are reasonably incurred in any action under this article if the person seeking public records has substantially prevailed." A.R.S. § 39-121.02(B) (emphasis added). Potter did not substantially prevail, but even if he did, it is within the court's discretion to award costs. *See* A.R.S. § 39-121.02(B). Thus, the court did not err.

### D.    The Superior Court Did Not Abuse Its Discretion When It Designated Potter a Vexatious Litigant Under A.R.S. § 12-3201.

**¶44**    "Arizona courts possess inherent authority to curtail a vexatious litigant's ability to initiate additional lawsuits." *Madison v. Groseth*, 230 Ariz. 8, 14, ¶ 17 (App. 2012). We review an injunction against filing lawsuits for an abuse of discretion. *See Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 47, ¶ 9 (App. 2007). "We defer to the court's findings of fact unless clearly erroneous, but we review de novo its legal conclusions." *Id.* We also review *de novo* issues of statutory interpretation. *Madison*, 230 Ariz. at 11, ¶ 8.

**¶45**    A *pro se* litigant is vexatious if the court finds he engaged in vexatious conduct. A.R.S. § 12-3201(C). Once designated a vexatious litigant, the *pro se* litigant may not file new pleadings, motions, or other documents without prior leave of the court. A.R.S. § 12-3201(B).

**¶46**    A.R.S. § 12-3201(E)(1) defines "vexatious conduct" as:

[A]ny of the following:

(a) Repeated filing of court actions solely or primarily for the purpose of harassment.

(b) Unreasonably expanding or delaying court proceedings.

(c) Court actions brought or defended without substantial justification.

(d) Engaging in abuse of discovery or conduct in discovery that has resulted in the imposition of sanctions against the pro se litigant.

(e) A pattern of making unreasonable, repetitive and excessive requests for information.

(f) Repeated filing of documents or requests for relief that have been the subject of previous rulings by the court in the same litigation.

Here, the superior court found Potter engaged in vexatious conduct prescribed by § 12-3201. *See* A.R.S. § 12-3201(E)(1)(c), (f). It found he "engaged in vexatious conduct per [A.R.S.] § 12-3201 by: repeated filing of court actions without substantial justification; and repeatedly filing documents or requests for relief that have been the subject of previous rulings by the court in similar litigation."

¶47        Potter argues that the superior court's vexatious litigant order does not follow the plain language of § 12-3201(E)(1)(c) or § 12-3201(E)(1)(f). Potter contends his behavior did not satisfy § 12-3201(E)(1)(c) because his claims were justified. But the court specifically found in its order that Potter "repeated[ly] fil[ed] . . . court actions without substantial justification[.]" And that finding is supported by the record. "Without substantial justification," "means that the claim or defense is groundless and is not made in good faith." A.R.S. § 12-3201(E)(2); A.R.S. § 12-349(F). The court found that Potter's court actions were groundless and not in good faith when it stated, "[t]he summary of Plaintiff's claims includes many examples of frivolous motions, disregarding court orders, re-hashed positions that were rejected by the courts, and plain attempts to harass parties and/or unnecessarily expand litigation matters." Because this behavior supports the finding that Potter repeatedly filed court actions "without substantial justification," the court did not err by finding that Potter engaged in vexatious conduct under § 12-3201(E)(1)(c). *See* A.R.S. §§ 12-3201(E)(1)(c), 12-349(F).

**¶48** A "vexatious conduct" finding under § 12-3201(E)(1)(c) alone is enough to designate Potter as a vexatious litigant. *See* A.R.S. § 12-3201(C), (E)(1). Thus, we need not consider Potter's challenge to the court's findings under § 12-3201(E)(1)(f).

**¶49** Potter also contends he cannot be designated a vexatious litigant because he "prevailed." He claims it is "absurd and irrational . . . to conclude Appellant was simultaneously the prevailing party and an 'abusive' (i.e., vexatious) litigant." But Potter misunderstands what it means to prevail. After Potter filed suit, Meza produced only two letters that Potter stated were "not the subject of this [s]pecial [a]ction." Robson produced documents she believed she had no duty to produce to avoid further litigation and expense. The House never produced additional records after Potter filed suit.

**¶50** Moreover, Potter's claims against each defendant were properly dismissed. Thus, Potter did not prevail, and the court's designation of Potter as a vexatious litigant did not lead to absurd results. *See State v. Estrada*, 201 Ariz. 247, 251, ¶ 16 (2001) ("[W]e interpret and apply statutory language in a way that will avoid an untenable or irrational result.").

**¶51** Potter also argues that the injunction does not satisfy the court's due process requirements. *See Madison*, 230 Ariz. at 14, ¶ 18. We disagree. When the court orders pre-filing restrictions, it must adhere to four principles:

> (1) to satisfy due process, the litigant must be afforded notice and an opportunity to oppose the order, (2) the court must create an adequate record for appellate review that includes a listing of all cases and motions leading the court to enter the order, (3) the court must make substantive findings as to the frivolous or harassing nature of the litigant's actions, and (4) the order must be narrowly tailored to closely fit the specific vice encountered.

*Id.* (cleaned up). First, Potter was afforded notice and an opportunity to oppose the order when the court gave notice and held an evidentiary hearing on the motion. The court allowed Potter to testify, admitting and reviewing nine exhibits.

**¶52** Second, the court referenced Potter's cases and motions that led to this order. It listed Maricopa County cause numbers CV2021-005501, CV2021-013210, CA-CV 2022-0441, and CV2022-014146, noting "[a] review

of the orders in those matters paints a troubling picture." It also referenced granted motions to strike Potter's pleadings because of their inflammatory and irrelevant allegations, only for Potter to repeat the stricken allegations in later filings.

¶53    Third, the court made substantive findings about the frivolous and harassing nature of Potter's actions when it found his "claims include[] many examples of frivolous motions" and "plain attempts to harass parties and/or unnecessarily expand litigation matters."

¶54    Finally, the court narrowly tailored its order when ordering that "Potter may not file any new pleading, motion or other document in this case or any other pending civil action without prior leave of the judge assigned to that case." "[O]rders restricting a person's access to the courts must be based on adequate justification supported in the record and narrowly tailored to address the abuse perceived." *De Long v. Hennessey*, 912 F.2d 1144, 1149 (9th Cir. 1990). The court here found:

> Plaintiff's various lawsuits have added new parties over time as he has expanded his efforts to pursue his conspiracy theories. He has sued his ex-wife, her family, family-law attorneys, medical providers, Arizona Public Service, insurance companies, a member of the Arizona House of Representatives, the Arizona House of Representatives, and several others.

¶55    Potter has an extensive history of bringing baseless actions against any person or entity. The breadth of the order addresses this specific vice. As the court acknowledged, "[it] is mindful that requiring court approval for any filing will place a burden on Plaintiff to demonstrate a factual and legal basis for future filings. But that is what is needed in this case." We agree. *Cf. Moy v. United States*, 906 F.2d 467, 470-71 (9th Cir. 1990) (A pre-filing restriction that prevents petitioner from filing complaints until they are reviewed is not narrowly tailored when there is no evidence of petitioner's general history of litigious filing.).

¶56    Potter argues that the order unconstitutionally infringes his First Amendment political speech rights. But "suits that lack . . . a reasonable basis. . . . are not within the scope of First Amendment protection." *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983) (cleaned up); *see also Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987) (A pre-filing requirement applied to a vexatious litigant "does not violate the first amendment."). Thus, the First Amendment does not protect

vexatious litigant behavior. *See Filipas*, 835 F.2d at 1146. Potter misconstrues the order as "retaliation for exercising his fundamental right to engage in core political speech." Rather, the order results from his baseless and relentless litigation. This consequence does not violate his First Amendment rights, and, as Defendants state, the order will not bar Potter from filing pleadings made in good faith.

¶57        Finally, Potter asserts the court improperly denied his motion to dismiss the vexatious litigant proceeding under A.R.S. § 12-751(A). "In any legal action that involves a person's lawful exercise of the right to petition . . . the person . . . may file a motion to dismiss or quash the action under this section." A.R.S. § 12-751(A). But a person who files a motion under the provision "has the burden of establishing prima facie proof that the legal action was substantially motivated by a desire to deter, retaliate against or prevent the lawful exercise of a constitutional right." A.R.S. § 12-751(B). Because Potter does not provide proof of Defendants' desires to deter, retaliate, or prevent the lawful exercise of his constitutional rights, Potter failed to meet his burden under § 12-751(B).

**E.        The Superior Court Did Not Err by Granting the Defendants Attorney's Fees.**

¶58        Potter argues that the court erred by granting Defendants fees under A.R.S. § 12-349. "We view the evidence in a manner most favorable to sustaining the award and affirm unless the trial court's finding that the action can be so characterized is clearly erroneous." *Phoenix Newspapers, Inc. v. Dep't of Corr.*, 188 Ariz. 237, 243 (App. 1997). Under A.R.S. § 12-349(A), the court must assess attorney's fees and expenses against a party that brings a claim without substantial justification or mainly for delay or harassment. *See* § 12-349(A)(1), (2). Because the evidence shows that Potter brought the claim without substantial justification or mainly for delay or harassment, the court's fee award was not clearly erroneous.

¶59        Potter argues that the court erred by granting Robson's motion for Rule 11 sanctions. *See* Ariz. R. Civ. P. 11(c). We review an award of Rule 11 attorney's fees for an abuse of discretion. *Villa De Jardines Ass'n v. Flagstar Bank, FSB*, 227 Ariz. 91, 96, ¶ 12 (App. 2011). Rule 11 requires that a party's pleading is not "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that the pleading's "claims, defenses, and other legal contentions [be] warranted by existing law or by a nonfrivolous argument." Ariz. R. Civ. P. 11(b)(1)-(2). If a pleading violates this rule, the court may impose sanctions. *See* Ariz. R. Civ. P. 11(c). Here, reasonable inquiry shows

that the A.R.S. § 39-121.02 claims against Robson as a private citizen are not warranted by existing law and are frivolous. *See* Ariz. R. Civ. P. 11(b)(2). Evidence also supports that Potter petitioned Robson for an improper purpose. *See id.* Thus, the evidence shows that Potter violated Rule 11(b). The court did not err by granting Robson Rule 11 sanctions.

**ATTORNEY'S FEES AND COSTS**

¶60  Potter requests his costs on appeal under A.R.S. §§ 12-341, 12-349(A)(1), (2), (3), and 39-121.02(B). We decline the request because he did not prevail on appeal. Defendants seek attorney's fees under A.R.S. § 12-349. Because Potter brought this appeal without substantial justification, we award Defendants their reasonable attorney's fees and costs upon compliance with ARCAP 21.

**CONCLUSION**

¶61  We affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA